but you'll certainly take time to get set up. Michael R. Mosier v. Global Economic Opportunities Group Inc. a.k.a. GEO Group Inc. et al. 23-12793. Let's see. And it looks like you're saving time for rebuttal. That's correct, Your Honor. Okay. You may proceed. Thank you, Your Honor. It may please the Court. I'm Thomas Birch on behalf of Michael Mosier from the University of Georgia. Today, I have two students presenting argument on behalf, Katie O'Neill and Harrison Demas, and I'll be at counsel table. Thank you, Your Honors. Thank you. All right. Ms. O'Neill, you have 11 minutes for your argument, so please proceed. Thank you, Your Honors, and may it please the Court. My name is Katie O'Neill, and I'm here today with Harrison Demas on behalf of Mr. Michael Mosier to ask the Court to reverse the district court's grant of summary judgment on his deliberate indifference case and remand for further consideration. The district court's decision was wrong for three reasons. First, the district court did not properly consider Mr. Mosier's motion for leave. Second, the district court failed to rule on Mr. Mosier's motion for noncompliance, resulting in an outstanding discovery matter. And third, the grant of summary judgment was improper on its merits because Apley Malcolm did act with deliberate indifference to Mr. Mosier's medical needs. For context, Mr. Mosier suffered a hemorrhagic stroke in February of 2018. He reported his stroke during the 4 o'clock head count, but despite exhibiting visible stroke symptoms, including an abnormal gait and numbness in his left side, the doctor was not contacted until nearly four hours later, and he was not taken to the hospital until after 8.40 p.m. Have we ever reversed solely based on a district court not itself analyzing the pioneer factors? This goes to your first issue. Yes, the pioneer—it is an abuse of discretion on its own to not consider the pioneer factors, and— What's your best case for that? Is that the Connecticut State Dental case? Yes, that is Connecticut State Dental. So, you know, I've looked at that case, and you're right. The quote you have in your brief is exactly what it says. But what we did there is we then went on ourselves to then analyze the pioneer factors. And if you look at all of these cases where this comes up on appeal, it seems that we go ourselves to look at the factors. I've just never seen us where we've reversed solely because a district court didn't, either in a summary order or didn't analyze them, and said, that alone is sufficient, we're sending it back, and we're not going to look at it ourselves. And that makes sense because under harmless error, of course, if we look at the record and determine that the factors are met, there's really no reason to reverse, right? Does that make sense? That does make sense, Your Honor. So let's talk about the factors. Tell me why you analyzing them— and let's concede for the moment the district court may not have done what it was supposed to do, but why you looking at them, those factors aren't met here. Yes, even if this court were to consider the pioneer factors, the pioneer factors are met because the danger of prejudice to the opposing party is not very much at all— Why—tell me why that is. I mean, here you had the other party, the defendants here, had fully briefed everything, had done everything, had waited, got a ruling, and then got a— and then filed what it needed to file with the district court. The district court had already analyzed it and had even entered judgment by the time— I know this was timely, but by the time it hits the docket, it seems to me that undoing all of that would cause at least some prejudice to the other side, would it not? The other side would not, in return, have to respond. They would not be required to file anything after this. This is allowing time for Mr. Mosier to respond properly to their motion for summary judgment and— It would change their objections. It would change their response to objections if they were timely. It would change—they would want to file a reply. I imagine, you know, if someone files a response, I generally want to file a reply to get the last word. That would seem to change the dynamics some, wouldn't it? And I'm not saying it's a huge factor, but at least it's some prejudice. Would it not be for the other side on this case? There may be a slight amount of prejudice. However, the amount of prejudice is far outweighed by the amount of harm that was caused to Mr. Mosier by not being able to make this motion. The length of delay and its potential impact on judicial proceedings plays into the first factor as well. This would be a short delay. Mr. Mosier wanted essentially an extension of time. So it seems to be a significant delay. So as I understand it, what happened here is there was—motions for summary judgment were filed. A first deadline came and went without any response, and it was extended. And then he files another extension, and the court says no, but I'm going to give you a little bit more time. And then, even with a little bit more time, he files one summary judgment, but then goes completely silent as to the other summary judgment, then waits the period for a ruling, then waits the period or at least some chunk of it for the district court to then take the objections or to look at the R&R, and then some point in there files. That's a lot of time, is it not? It is quite a bit of time, Your Honor. However, this goes into the third pioneer factor, which is the reason for the delay. Mr. Mosier was experiencing worsening cognitive decline as a result of his stroke. So here's where I think the district court did or the magistrate judge did talk about. Because at least with regard to the first continuance, the magistrate judge seemed to suggest, hey, you know, he has enough time to file a summary judgment on the other one, and he filed a really articulate motion for extension here that I'm denying that cites case law and goes on for 11 pages. If he's able to do all that, then why is he not able to at some point do something? There just doesn't seem to have a really good explanation for why he's not able to file some response with all of this time and with having done it in a related, almost identical circumstance. His condition in 2023 is different from his condition in 2022. It has worsened since 2022. He's experiencing vertigo, memory loss, vision impairment, and those are reasons that made his ability to litigate in 2023 different from his ability in 2022. Alternatively, this court should find that the filing the motion for leave was a timely objection to the R&R and that it was an abuse of discretion to not file that motion. I know you make that argument in reply, and I understand why you do it in reply. But your client here, for whatever reason, decided he wanted his own brief on his own for the initial brief, even though he had very, very capable counsel. And I've read that brief like I've studied some really important things in my life, and I just cannot find that argument that you've just made that we should redirect and reinterpret this as an objection as opposed to the pioneer factors. He makes the pioneer factors very, very clear, but he never says what you've just said, which you articulate well in the brief, which is you should interpret this as a different way. How do we do that for the first time in reply? Arguably, the substance of his motion, and he brings this point up in his opening brief, is that he is objecting to the magistrate court and to the district court. And so the substance of his argument is an objection. But he says he has never received the R&R. I mean, the whole point of his objection, his abstention is he doesn't even know the R&R has come out yet. And he never makes an argument about why the R&R is wrong. Even on his face, assuming it's timely, how can we retreat that as an objection to the R&R? By the time that he has filed his motion for leave to file an out-of-time summary judgment, he has received the R&R. He received the R&R on July 11, and then six days after that was issued to him, he filed his motion for leave on July 20. Is there any reference to the R&R in the motion for extension? I don't believe that there's a direct, or he's objecting to generally this decision, this grant of summary judgment, which was an adoption of the report and recommendation. But your client has demonstrated that he understands the difference between objections to a magistrate judge's report and recommendation and a response to a motion for summary judgment. He has filed objections to R&Rs, and he has filed responses to motions for summary judgment. So why should we interpret this document as objections to the R&R? It's an objection to the R&R because of the substance of the document. It raises factual disputes, making summary judgment improper. It is objecting to the magistrate court's recommendation for summary judgment. And for those reasons, it should be an objection. Alternatively, this court could consider it as a Rule 60B motion for reconsideration. The district court also erred because there's an outstanding discovery matter that was yet to be resolved, which the district court had an obligation to address before any grant of summary judgment. Mr. Moser had filed a motion for noncompliance, arguing that the defendants had not properly complied with a discovery order that the magistrate court had issued. This is back in March of 2022. Mr. Moser repeated this objection, and then he again raised this issue in his motion for leave, that there is an outstanding discovery matter. Why is that not addressed in Docket Entry 145? Docket Entry 145 is?  An order of the district court dealing with, it doesn't say it's an omnibus order, but it deals with a number of outstanding matters that have been pending before it, including, as I understand it, the issue that you're raising. Now, I agree, it's not well analyzed, it's not extensive, but it simply says, you know, we're denying, these are the list of things that are before me, and I'm denying this one, and it goes on to address a bunch of other things. Why would that not be at least a ruling on it, whether it's a sufficient ruling as a separate issue? The magistrate court did rule on his motion to compel. They denied his motion to compel for multiple reasons. There were multiple things in that motion to compel. This specific issue, Mr. Moser then reiterated a noncompliance to the order. He's objecting to their denial of his motion to compel, because he's saying they did not sufficiently comply with the discovery order. And that is because the— What docket entry are you referring to, of your client? I believe it's entry number 143, it's his objection. And the first line of docket entry 145 is, before the court are plaintiff Michael R. Moser's objections to various nondispositive rulings made by the United States magistrate judge, see generally docket entry 143. Yes, there are multiple discovery matters at issue. This specific issue dealing with the transport logs is the one that he is arguing. Right, but I understand that, but if there's a general denial, even if it's not specifically mentioned, why is that not sufficient coverage in the order to have made a ruling on it? I believe he subsequently objected again, and has raised this issue and has continued to argue that the motion to compel has not been sufficiently complied with by the defendants, and in his motion for leave again raises this issue. Finally, very briefly, on the merits, his summary judgment was improper because there is a factual dispute for the jury to decide whether defendants acted with deliberate indifference. Did you, what's your best argument that your client raised the merits, the summary judgment as to the merits in his initial brief? His initial brief begins by saying that he, that the defendants acted with deliberate indifference to his medical needs. He specifically says that in his argument on pages 16 through 19. He doesn't point to any facts, he doesn't point to any record sites, he doesn't have any substantive argument in support of the claim, correct? I believe he does reiterate, he doesn't specifically say that this fact was deliberate indifference. However, he cites the standard. He says that their treatment of him was deliberate indifference, and so he does not abandon that claim because he raised it on appeal and is saying that their actions were deliberately indifferent. Thank you. Thank you. Mr. Boyer. And it looks like you're sharing your time. You're going to take the first 13 minutes. Yes, Your Honor. Good morning, Your Honor. And counsel for Dr. Arepati, I'll attempt to reserve a couple of minutes for counsel Dr. Arepati. Good morning, Your Honors. My name is Matt Boyer, counsel for defendants Malcolm Bailey and the GEO group. I'll lead with, first, there were, by my count, essentially four arguments that were just raised by counsel for appellant. Three of those, I would say, are positions they've been abandoned. They were not raised in the initial brief, or at least at minimum they were touched on, but then there was no actual substantive discussion. Let me say what I think was brought up. I think the argument regarding, or that was preserved, the argument regarding the pioneer factors was clearly raised by the initial brief, and the subpoena noncompliance, I believe, was also raised in the initial brief. Yes, Your Honor. I would agree that, yes, those I think are the two issues. Those two. Well, and I don't think the subpoena noncompliance, the issue that was brought up about the subpoena noncompliance, as I read the initial brief, was the issue about that there was an early subpoena that my office issued at the beginning of discovery, and he went on about that. That's one of them, but there's also with regard to, this was not the subpoena, but the motion to compel, which was ultimately granted in part, that required a disclosure of number of stroke incidents at a specific time, and then there was an objection to what was returned, which the prisoner here believed was not compliant with the order and what he had requested, and I think that's the issue that was raised by counsel here and is preserved. Okay. Well, Your Honor, respectfully, I would disagree that that was adequately raised. I believe that they mentioned that there was a motion to compel, and he's primarily talked about the time preparation for the motion to compel, but in any event, that it was, but that that wasn't touched on or the address that's saying, hey, these specific documents I need, I don't believe that those were properly preserved on the initial brief and they've been abandoned, but even if it was, for the points that you raised previously is that that issue was ruled upon by the district court and in response to the motion to compel at, I believe, as you mentioned, it was docket one for docket entry number 145, and the review on that is for abuse of discretion. I'm looking at pages 16, 17, and 18 of the initial brief. This is our docket entry 81 because it's a complicated procedural history here. Sure. It's headed denying appellant's objections to the magistrate judge's order, denying his motion to compel, and then it starts off with a history regarding appellant's motion to compel and discusses the actions that happened and why the district court abused his discretion for not allowing him to get what he asked for in his motion to compel. That seems to be preserved. Well, Your Honor, and I think that in looking at that, starting on page 16, I think that's where I mentioned that he mentions this, quote-unquote, hearing by ambush, the militia's intent to gain strategic advantage, and these obstructionist activities, but he doesn't specifically reference, hey, there are these interrogatories or these requests for reductions either to the GO group or to the Department of Corrections that were deficient and that I needed those for the purposes of summary judgment. I don't think that that is adequately addressed on those pages or at least not fairly addressed to deem him not abandoned. Let's just assume I disagree with you on that. So tell me why the district court did not abuse his discretion here. Well, Your Honor, for the reasons that we discussed before, is that discovery lasted for nearly two years, and the record is replete with multiple hearings, multiple instances in which Mr. Mosher got to make his statements and make his arguments about the documents that he wanted, the scope of discovery, and those were ruled on by the district court. And this specific issue about these specific interrogatories, as you mentioned, those were on the motion to compel, those were ruled on by the court at ECF 145, and the review standard here is abuse of discretion. There is no evidence that the court abused its discretion after having these multiple hearings and hearing from both sides and having briefing and reviewing it. In fact, all of the written discovery in the document production at the court below was provided to the court for review. So it wasn't just that GEO and the Georgia Department of Corrections were saying, hey, you know, take our word for it, we've produced them, everything. All of that was provided to the judge for review. I know, but it's the scope of the review that's the issue here. So what he is saying is, and he has the burden to be able to meet a deliberate and different standard, one way to do that is to show that there have been many prior instances of misdiagnosis for stroke or that there have been a number of stroke victims who were untreated. That's what he was attempting to do here. And so he's asking for give me the information about others that have been there for a stroke. Limiting that or obfuscating by not giving it would seem to get in the way of what would be a legitimate discovery, would it not? Well, Your Honor, I think that the court did limit. What the court allowed was well within that scope, and the parties responded to that. There's no evidence that there's any obfuscation here. The court reviewed what was produced and reviewed the responses and made a determination that the GO and the Georgia Department of Corrections, the non-party, adequately responded to this discovery and made adequate production. And, Your Honor, again, moving to the one other factor that we believe was not abandoned was the pioneer factor. And to be clear, we don't think, for the reasons you said, that the pioneer factors haven't been met. First of all, it was a motion for leave to file an objection or, excuse me, a response to summary judgment. It was not an objection to the report and recommendation. That's clear for the reasons that Your Honor has mentioned before. Mr. Mosher demonstrated the ability to file objections to report and recommendations. In fact, he did file an objection to a report and recommendation. The reason that appellants wanted to do that. Counsel, what is the prejudice to you? The prejudice, again, for the reasons that you stated previously. I know what I ask questions of your opposing counsel, but that doesn't mean what I stated. What I'll state to you or what I'll ask you questions about is you would have had to do everything that I talked about with your opposing counsel anyway. In other words, if he did timely file something, you would have filed a reply. If he objected timely, you would have filed a response. How are you prejudiced from not having to do what you otherwise would have done and any competent counsel would have done? Where is the extra prejudice? The extra prejudice is that GEO, like any party, is permitted to have efficient resolution of these matters and timely resolution of these matters. Further, Mr. Mosher was granted, there's normally a 21-day response time for motions for summary judgment. He was granted initially 75 days to do so. And then he didn't even file his objection or his motion for leave until 120 days after the summary judgment had been filed by GEO. So we're talking about four months. So GEO, that is a prejudice. But that's just one of the factors. The Supreme Court has said that the two other factors that are paramount are that factor but also the efficient administration of justice here. And so that dovetails into the same argument. The district court had, there had been 120 days to pass. We have lots of case law which says that we want cases decided on the merits. I mean, yes, this was longer than it should have been. But once they got the response, what's the harm in saying, all right, I'm considering the response and here is what my ruling is and just ruling on the merits instead of just ignoring it. Well, Mr. Mosher had plenty of opportunities to rule on the merits. He had plenty of time. He demonstrated the ability to be able to file briefs. He filed a very thorough brief for Dr. Rayapati's summary judgment response. He filed a very thorough brief on why he should be able to get the motion for extension. And the prong, the factor about the efficient administration of justice, it has to mean something. Both of those have to mean something. If we can simply say we're going to just, whatever, it doesn't matter. If we have a pro se inmate that we're just going to continue to allow him every opportunity to file extension after extension after extension without an actual showing. That's not the history of this litigation. Certainly what you're saying is true. But he did timely, after an extension, file a response to one summary judgment motion. He, as I can tell over the course of a long litigation, was actively involved, responded, filed motions. This is not someone who seemed to be dilatory from day one. What you had is someone with one particular summary judgment asking for some more time and getting a summary denial. And so that doesn't seem to be the kind of explosion of the efficient administration of justice that would require us to not reach the merits of a ruling. Well, Your Honor, I think that, first of all, he did. There were multiple instances in which he was granted extensions of time, both of discovery but also of this brief. And it was a large amount of time that he was given. And he let that time period come and go. He did not pop up and say, Hey, Your Honor, it's coming close to my June 5th deadline. Can I have a one-pager that says may I have another 30, 60 days of having medical issues? And he didn't present anything to show that there was actually any sort of medical issues. There's no documents to verify any of these assertions. And these were medical issues that were addressed and was the reason for the first extension. These were medical issues that were not new to 2023. These were medical issues that even by his own affidavits in the record, he's been dealing with 2018 through the entire litigation of this in which he's shown certainly had the aptitude and the ability to file the pleadings that he's needed to. And it's not just a pioneer factor. I think that for a Rule 6 motion, there has to be a showing, one, of good cause here. And I think that Mr. Mosher did not show and did not actually demonstrate that there was good cause for this extension. And there's also the excusable neglect factor is something akin, as the court's case law indicates, is something that's akin to a negligence and not like a mistake of fact. And here we don't have that here either. So those are also two points that cut against why the district court properly did not allow an extension of time. If the court doesn't have any more questions, I'll cede my time. Thank you. Thank you. Mr. Clark. Your Honor, since there was two minutes left from his oral argument. Yeah, if you would give him four by my calculations. May it please the court, Dave Clark appearing on behalf of Dr. Samuel Raiapati in support of his motion for summary affirmance. Appellant's response raises four issues in which he claims to have raised an argument challenging the propriety of the district court's order granting summary judgment for Dr. Raiapati. The operative brief in which appellant has to raise arguments here is his opening brief, his pro se opening brief by virtue of the court's January 29, 2025 order. The rule as it relates to raising arguments for the purposes of appeal is that an appellant forfeits an issue when she raises it in a perfunctory manner without supporting argument or authority. The first instance appellant's claim raised an issue is a single sentence footnote where appellant summarily states his complaints of dizziness from his diet precluded summary judgment. It's well settled in the 11th Circuit that a single sentence footnote is insufficient to raise an issue for the purposes of appeal. That's ASDAC versus Panama Canal Commission, 453 F. 3rd, 1309, 2006, holding that an argument is waived because it appears only in a footnote in the initial brief and is unaccompanied by argument. The second instance appellant claims raises an argument is that the medical records were falsified. Setting aside whether or not there's any support for that allegation in any of the briefing, this argument is, again, a perfunctory contention without reference to any authority or sites to the record or to case law supporting it. It's simply, and moreover, it's not really clear that it's directed at the motion for summary judgment in Dr. Rayapati's favor. The third instance they refer to in the motion to compel is the motion to compel documents from nonparty Georgia Department of Corrections that appellant contends was pending when the summary judgment was granted. There is no reference to Dr. Rayapati anywhere in the entire section of the motion to compel in appellant's opening brief or anywhere in the brief at all tying Dr. Rayapati to this argument. It's also significant that the plaintiff, or excuse me, appellant contends that that evidence might have shown a pattern of deliberate indifference related to stroke treatment. But Dr. Rayapati is not alleged to have played a role in stroke treatment. He's only alleged after the fact to have changed a diet that increased dizziness and potentially increased the risk for falls. So even if the evidence were compelled, there is no indication that in the briefing that would connect that evidence to any claim against Dr. Rayapati and therefore no reason for Dr. Rayapati to think from the opening brief that that argument was raised against him. The fourth instance refers to appellant's contention that the court failed to consider appellant's motion for leave to file a response to the motion for summary judgment. As Appellant Law Clinic's reply brief notes, appellant's motion for leave was to cure appellant's failure to timely file a response to the geodefendant's motion for summary judgment. He did reply to Dr. Rayapati's motion for summary judgment, so the motion for leave does not apply to him at all. And I think it's a mistaken contention that that would be an argument in the opening brief that would be construed against Dr. Rayapati. None of those instances is sufficient under Federal Rule of Appellant Procedure 28 to raise an issue or argument as to Dr. Rayapati for the purposes of appeal. Because appellant's opening brief fails to challenge the propriety of the district court's grant of summary judgment for Dr. Rayapati, the court should grant summary affirmance for Dr. Rayapati and affirm summary judgment in Dr. Rayapati's favor. Thank you very much. Mr. DeMoss, you have reserved four minutes for rebuttal. Good morning, Your Honors. I would like to start by circling back to this noncompliance with the motion to compel issue that was raised on both arguments by both counsel. If I may, I'd like to just walk us through the specific merits of what he was seeking. So, you know, from the GDC, he was seeking evidence of urgent emergent encounter logs, as well as any evidence of stroke-like events that happened at the GEO facilities. The GDC responded by providing transport logs only, but didn't address this other component that he was seeking. But wasn't that inconsistent with the magistrate judge's order? As I understood it, the magistrate judge said they had a hearing, this is part of what your client complains about, and said after the hearing, I'm not going to give you everything you're asking for, I'm only going to give you this, which was the transportation logs. They came back and responded and said the only instance we have is you, the plaintiff. So there was some dispute, Your Honor, at the hearing as to what evidence, what documents they actually had. The GDC themselves didn't actually know what evidence they had on this point. But then in the subsequent order, the magistrate judge did instruct them to find all documents that would be responsive to information regarding stroke-like events, and to, if those documents exist, to produce them. So that would include the urgent and emerging encounter logs. And those documents were required to be kept per GDC guidelines. Why this is important is because there was no discussion in the order itself denying the motion to compel of the merits of that point. They denied it on the grounds that the GDC, the magistrate judge denied it on the grounds that the GDC said they complied with the order, but didn't actually address whether these urgent and emerging encounter logs existed and whether they would have contained relevant information. Importantly, Mr. Mosier alleges that there's four other individuals who suffered strokes while at this facility, and at least those individuals would have been in these urgent and emerging encounter logs. Some of them were not transported to the hospital, but were denied treatment. And that goes directly to his claim of showing that there's a policy, practice, or custom of not treating stroke victims with due care. And that information also, it's a little bit more tenuous as it's related to Dr. Rayapati, but if Mr. Mosier were able to access these documents explaining who these stroke victims were, it might lead to admissible evidence regarding Dr. Rayapati if he treated these individuals. So it is connected to that claim as well. If I may, I'd like to also circle back to the pioneer factors. If I understand the argument correctly, it seems like opposing counsel is not refuting that the pioneer factors were not considered and that that was an abuse of discretion in and of itself to not consider them, period. Right, but we're only going to reverse if, after looking at those factors, it would warrant reversal, right? Yes, Your Honor, and I think the most important factor is factor three. While there may have been some prejudice in terms of timing, that's slight compared to the fact that Mr. Mosier does allege increased and progressed symptoms at the time of this particular filing. What do we do with the magistrate judge's finding that that is really not all that credible given, A, he contemporaneously filed an extensive summary judgment response for Dr. Rayapati's motion, and B, his own motion for extension of time was 11 pages and cited case law. In other words, it wasn't someone who was suffering from the symptoms they would have said. What do we do with that? So Mr. Mosier does point out that the process for filing and writing these extensive responses and briefs is that he has to dictate it to a third party because he's unable to focus, and he also alleges that that got even worse. So earlier when he was able to do it, it was several months before, he does allege that his symptoms were worsening, and it stands to reason that if he was responding so diligently previously that it might actually be true that he was suffering worsened symptoms at the time of this motion in question, which would explain why there was such a gap in responding to the summary judgment in this case but not previously. Thank you, Mr. DeMoss. I thank both sides for your argument today. Mr. Birch, I want to thank you for the involvement of the UGA Appellate Litigation Clinic, and thank you to these two students who ably argued today. Thank you. We have your case under advice.